IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  ZOSTAVAX (ZOSTER VACCINE  :  MDL NO. 2848
LIVE) PRODUCTS LIABILITY           :
LITIGATION                         :  CIVIL ACTION NO. 18-md-2848
_____    :
                                   :
THIS DOCUMENT RELATES TO:          :
                                   :
JOHN MICHAEL BUSH and JOHNNY       :
MITCHELL v. MERCK & CO., INC.,     :
et al.                             :
Civil Action No. 19-1117           :
                                   :
RICHARD DOMAN and MAUREEN M.       :
DOMAN v. MERCK & CO., INC.,        :
et al.                             :
Civil Action No. 18-20118          :
                                   :
DAVID R. ELMEGREEN as Trustee of   :
THE SUE A. ELMEGREEN TRUST v.      :
MERCK & CO., INC., et al.          :
Civil Action No. 17-2044           :
                                   :
JOHN NIEDZIALOWSKI and KATHERINE   :
NIEDZIALOWSKI v. MERCK & CO.,      :
INC., et al.                       :
Civil Action No. 19-20025          :
                                   :
EMILY SANSONE v. MERCK & CO.,      :
INC., et al.                       :
Civil Action No. 18-20114          :
_____    :  _____

MEMORANDUM IN SUPPORT OF PRETRIAL ORDER NO. 402

Bartle, J.                                    November 10, 2021

        Before the court are five bellwether strict liability

and negligence actions brought respectively by John Michael

Bush, Richard Doman, David R. Elmegreen as Trustee of the Sue A.

Elmegreen Trust, John Niedzialowski, and Emily Sansome.[1]  These
actions are part of the Multidistrict Litigation involving
Zostavax, a vaccine developed by defendants Merck & Co., Inc.
and Merck Sharp & Dohme Corp. ("Merck") to prevent shingles,
that is herpes zoster.  In a word, plaintiffs assert that
Zostavax, rather than preventing, caused them to contract
shingles.  Defendants move for summary judgment based on federal
preemption of plaintiffs' state law design defect claims.[2]

Under Rule 56(a) of the Federal Rules of Civil
Procedure, a party may move for summary judgment on a claim or
defense or a part of a claim or defense.  The court may grant
partial summary judgment "if the movant shows that there is no
genuine dispute of material fact and the movant is entitled to
judgment as a matter of law" on a particular legal issue.  A
factual dispute is genuine if the evidence is such that a
reasonable factfinder could return a verdict for the non-moving
party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48
(1986).  A factual dispute is material if it might affect the

---

1.   The additional plaintiffs in several of these cases are
spouses who claim loss of consortium.

2.   The five plaintiffs rely on the following state law:
John Michael Bush on Georgia law; Richard Doman on Colorado law;
Sue Elmegreen on California law; John Niedzialowski on New York
law; and Emily Sansone on Florida law.  Merck does not challenge
that each state has a cause of action for a defective design in
products sold or consumed within its borders and does not argue
that the varying state laws affect its preemption analysis.

outcome of the suit under governing law. Id. at 248.  The court
views the facts and draws all inferences in favor of the
nonmoving party. See In re Flat Glass Antitrust Litig., 385 F.3d
350, 357 (3d Cir. 2004).

Merck first submitted its Investigational New Drug
Application for Zostavax to the Federal Food and Drug
Administration ("FDA") on September 19, 1996.  The FDA approved
the vaccine on May 25, 2006.  The vaccine is designed for adults
50 years and older.  It is approximately 50% effective, wanes
over time, and is less effective as the recipient ages.  It is
intended to induce an immunity response to shingles and not to
cause shingles in order to effect immunity.

One of the plaintiffs' claims is that Zostavax was
defectively designed because it contains a live-attenuated
virus, that is, a weakened form of the wild type virus found in
everyone who has had chickenpox.  Plaintiffs maintain that Merck
should have originally submitted a safer drug to the FDA for
approval and particularly one without a live-attenuated virus
such as Shingrix later developed by GlaxoSmithKline to prevent
shingles.  Shingrix was approved by the FDA in 2017, eleven
years after the FDA approved Zostavax.  Plaintiffs allege that
defendants could have designed Zostavax in compliance with their
duties under state law before FDA approval in 2006.  Plaintiffs

do not argue liability based on the failure of Merck to have
redesigned Zostavax <u>after</u> FDA approval.

Federal preemption on which Merck relies arises from
the Supremacy Clause of the Constitution which provides that the
"Constitution and the Laws of the United States . . . shall be
the supreme Law of the Land . . . any Thing in the Constitution
or Laws of any State to the Contrary notwithstanding." U.S.
Const. art. VI, cl. 2.  State law is preempted when Congress
expressly provides for preemption in a particular statute.
<u>Altria Group, Inc. v. Good</u>, 555 U.S. 70, 76 (2008).  Preemption
also exists where it is impossible for a party to comply with
both federal and state requirements.  Where federal and state
law conflict, state law is a nullity.  <u>Fla. Lime & Avocado
Growers v. Paul</u>, 373 U.S. 132, 142-43 (1963).  Finally,
preemption comes into play where state law creates "an
unacceptable obstacle to the accomplishment and execution of the
full purposes and objectives of Congress."  <u>Wyeth v. Levine</u>, 555
U.S. 555, 563-64 (2009) (internal quotation marks and citation
omitted).  In its analysis, the court must always be mindful of
the strong presumption against preemption in the areas of
traditional state regulation to protect health and safety.
<u>Altria</u>, 555 U.S. at 77; <u>Fellner v. Tri-Union Seafoods, L.L.C.</u>,
539 F.3d 237, 247-48 (3d Cir. 2008).

Merck relies on impossibility preemption which the
Supreme Court has characterized as "a demanding defense."
Wyeth, 555 U.S. at 573.  Merck maintains that it was not
possible for it to comply with the design requirements of both
federal and state law.  The issue of impossibility preemption is
a matter of law to be decided by the court with no role for a
jury.  Merck Sharp & Dohme Corp. v. Albrecht, 193 S. Ct. 1668,
1680 (2019).

The seminal case in the area of preemption involving
prescription drugs is Wyeth v. Levine, supra.  There the Supreme
Court held that federal preemption did not preclude an action
against Wyeth under Vermont law for failure to provide an
adequate warning of the risk of Wyeth's brand-name drug
Phenegran used to treat nausea.  Because it was injected
incorrectly, plaintiff developed gangrene, and a hand and
forearm had to be amputated.

The FDA had deemed the warnings sufficient when it
approved the drug application and later when it approved changes
in the drug labeling.  Nonetheless, the Court held that Wyeth at
all times "bears responsibility" for the contents of its labels.
555 U.S. at 570-71.  While the FDA retains authority to reject
label changes, state law was not preempted since there was not
clear evidence that the FDA would have rejected a label change
so as to make it impossible for Wyeth to do so.  Id. at 571.

-5-

Wyeth also argued that a state law duty to provide a
stronger label "would obstruct the purposes and objectives of
federal drug labeling." Id. at 573.  In denying preemption on
this ground, the Court reviewed the 70-year history of the Food,
Drug, and Cosmetics Act and noted that Congress did not enact
express preemption.  In the Court's view, if Congress thought
state law claims "posed an obstacle to its objectives," it would
have expressly preempted state law.  Id. at 574. Its silence on
the subject "is powerful evidence that Congress did not intend
FDA oversight to be the exclusive means of ensuring drug safety
and effectiveness." Id. at 575. Significantly, it noted that
Congress enacted express preemption for medical devices in 1976
but has declined to do so for prescription drugs.  Id. at 574.

Merck relies on two later Supreme Court decisions to
support its preemption argument.  The first is PLIVA, Inc. v.
Mensing, 564 U.S. 604 (2011).  The plaintiffs sued a generic
drug manufacturer under Louisiana law for personal injuries
suffered from a drug designed to speed the movement of food
through the digestive system.  Plaintiffs claimed that defendant
was liable for failure to provide adequate warnings on its
generic drug.  The Supreme Court held that the lawsuits failed
because of impossibility preemption.  The Court reviewed the
statutory and regulatory scheme for generic drugs which require
that generic drug manufacturers use the same warning labels and

-6-

same design for generic drugs as exist with respect to the
corresponding brand-name drugs.  The generic manufacturer has no
other choice.  Thus it cannot comply both with the federal
requirement and with state law that would mandate stronger
warnings.  The Court distinguished Wyeth which involved a
brand-name drug where the manufacturer of its own volition could
comply with both state and federal law.  Mensing, 564 U.S. at
624.

Merck also cites Mutual Pharmaceutical Co., Inc. v.
Bartlett, 570 U.S. 472 (2013).  In this action plaintiff alleged
that a generic drug manufacturer was liable under New Hampshire
law for her serious personal injuries resulting from a design
defect of its generic nonsteroidal anti-inflammatory drug.
Since the manufacturer under federal law must follow the design
of the brand-name drug and could not change its design, the case
evolved into a claim for failure to provide an adequate warning.
Citing Mensing, the Supreme Court held that state law defective
design claims turning on the adequacy of the drug warnings were
preempted.  It was not possible under federal law to change
either the design or label of a generic drug and thus it was not
possible to conform to state law.

The Court in Bartlett rejected the argument that to
escape the impossibility predicament the manufacturer could stop
selling the drug.  As the Court stated, preemption cases

"presume that an actor seeking to satisfy both his federal-and state-law obligations" is not required to cease sales of its product altogether in order to avoid liability.  570 U.S. at 488.

Merck's reliance on Mensing and Bartlett is misplaced. First, those cases concerned generic drugs which are subject to rigid federal statutory and regulatory requirements giving the generic manufacturer no alternative but to adhere to the design and labeling of the analogous brand-name drug.  Zostavax, by contrast, is a brand-name drug subject to a different and more flexible protocol.  See Crockett v. Luitpold Pharm., Inc., Civ. A. No. 19-276, 2020 WL 433367, at *8 (E.D. Pa. Jan. 28, 2020); In re Tylenol (Acetaminophen) Mktg., MDL No. 2436, 2015 WL 7075949, at *21 (E.D. Pa. Nov. 13, 2015).  Second, Mensing and Bartlett focused on liability for inadequate labeling or defective design at a point in time after FDA approval. Plaintiffs here pursue only pre-approval design defect claims.

Aside from Mensing and Bartlett, Merck urges the court to follow Yates v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., 808 F.3d 281 (6th Cir. 2015), a Sixth Circuit case directly on point, which barred a pre-approval design defect claim on the ground of impossibility preemption.  There plaintiff sued defendant as a result of a stroke suffered from using its brand-name birth control patch.  Her complaint included a state

-8-

law claim alleging that defendant should have submitted a safer design for the patch at the time it was first seeking FDA approval.  The Court acknowledged that there was no federal law prohibiting defendant from doing so.  Nonetheless, it upheld the District Court's grant of defendant's motion for summary judgment.  It reasoned that it would be too attenuated to decide whether the FDA would have approved a different design.  In addition, the Court rejected plaintiff's argument that defendant could avoid impossibility preemption by not selling the defective birth control patch in the first place. The Court referenced the Supreme Court's decision in <u>Bartlett</u>, <u>supra</u>, that asking the manufacturer to stop the sale of a product is not a viable argument to avoid impossibility preemption.  <u>Yates</u>, 808 F.3d at 300.

Numerous cases outside the Sixth Circuit have disapproved of <u>Yates</u> insofar as it held that state law pre-FDA approval design defect claims are barred by impossibility preemption.  <u>Gaetano v. Gilead Scis., Inc.</u>, Civ. A. No. 21-1418, -- F. Supp. 3d --, 2021 WL 1153193, at *7-8 (D.N.J. Mar. 26, 2021); <u>Crockett</u>, 2020 WL 433367, at *8; <u>Holley v. Gilead Scis., Inc.</u>, 379 F. Supp. 3d 809, 824-25 (N.D. Cal. 2019); <u>Young v. Bristol-Myers Squibb Co.</u>, Civ. A. No. 16-108, 2017 WL 706320, at *7 (N.D. Miss. Feb. 22, 2017); <u>Guidry v. Janssen Pharm., Inc.</u>, 206 F. Supp. 3d 1187, 1208-09 (S.D. La. 2016); <u>Sullivan v.</u>

Aventis, Inc., Civ. A. No. 14-2939, 2015 WL 4879112, at *5-6
(S.D.N.Y. Aug. 13, 2015); Trahan v. Sandoz, Inc., Civ. A. No.
13-350, 2015 WL 2365502, at *4-6 (M.D. Fla. Mar. 26, 2015);
Estate of Cassel v. ALZA Corp., Civ. A. No. 12-771, 2014 WL
856023, at *5-6 (W.D. Wisc. Mar. 5, 2014).[3]

This court finds those decisions persuasive.  In
Holley v. Gilead Sciences, 379 F. Supp. 3d 809 (N.D. Calif.
2019), for example, the plaintiffs suffered kidney and bone
damage from a brand-name drug.  The court had before it a motion
to dismiss based on impossibility preemption.  One of
plaintiffs' state law claims alleged that defendant should have
asked the FDA to approve a safer alternative when it was first
before the regulatory body.  The Court rejected defendant's
argument that the claim was preempted.  It reasoned that
defendant could have complied with state law by submitting an
alternative design before seeking FDA approval.  Since the case
was in the motion-to-dismiss stage, defendant had not presented
clear evidence that the FDA would not have approved the safer
version.

The Holley court also rejected the Yates analysis that
it was too attenuated to assume that the FDA would approve the

_____

3.   Contra e.g., Javens v. GE Healthcare, Inc., 2020 WL
2783581, at *6 (D. Del. May 29, 2020); Gustavsen v. Alcon Labs.,
Inc., 272 F. Supp. 3d 241, 255 (D. Mass. 2017).

safer drug since the plaintiff had alleged that the FDA had done so by the time of the Holley lawsuit.  Finally, the Court found inapplicable the argument that impossibility preemption does not apply because the defendant could have stopped selling the drug. The Court explained that plaintiff was simply saying the defendant should have acted differently before it obtained FDA approval for the drug in issue.

The Supreme Court's decision in Wyeth is controlling here.  While it dealt with an inadequate warning, this court sees no difference in the analysis when the claim asserted is a pre-approval design defect.  Wyeth is a stark reminder that state law still plays an important role with respect to the safety of drugs.  See also Albrecht, 193 S. Ct. at 1677-78. There is nothing in federal law to prohibit a drug manufacturer from originally submitting to the FDA for approval an application for a brand-name drug with a safer design required by state law.  Even Yates makes this concession.  808 F.3d at 299.

Plaintiffs maintain that the safer design of Zostavax should not have included a live-attenuated virus.  While Merck raises the defense that the science did not exist to do so in the timeframe before the Zostavax application was approved, there exists genuine disputes of material fact on this issue that will have to be resolved at trial.

-11-

Merck's motion for summary judgment fails for another reason.  At this stage of the proceedings, it has not come forward with clear evidence that the FDA would not have approved an application for a vaccine without a live-attenuated virus. Wyeth, 555 U.S. at 571.  The absence of such evidence is not surprising as the FDA later approved Shingrix.  This court rejects as a matter of law any argument that the FDA would not have approved Merck's submission of an application for a drug without a live-attenuated virus.  See Albrecht, 193 S. Ct. at 1680.

The stop-selling argument Merck raises and shoots down has no applicability here.  As in Holley, the plaintiffs here are simply asserting that Merck should have acted differently before it sought approval to sell Zostavax, not that it should have stopped selling it.

Accordingly, the motion of Merck for summary judgment based on preemption of plaintiffs' design defect claims will be denied.